## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 17-22929-KING

**TERRY CARRAWAY, as Personal**
**Representative of the Estate of his deceased son,**
**KENTRILL CARRAWAY,**

      **Plaintiff,**

**v.**

**JUAN J. PEREZ, in his official capacity as Chief of**
**Police of Miami Dade County, Florida, GEORGE**
**EUGENE and MIAMI DADE COUNTY, Florida a**
**Political subdivision of the State of Florida,**

      **Defendants.**

_____/

### MIAMI-DADE COUNTY AND JUAN C. PEREZ'S MOTION TO STAY PROCEEDINGS AND ADMINISTRATIVELY CLOSE CASE PENDING RESOLUTION OF RELATED STATE CRIMINAL AND ADMINISTRATIVE INVESTIGATIONS OR, IN THE ALTERNATIVE, FOR AN EXTENSION OF TIME TO RESPOND TO THE COMPLAINT

      Defendant, Miami-Dade County ("the County") and Miami-Dade Police Department Director Juan C. Pere, in his official capacity as Director of the Miami-Dade Police Department ("Director Perez") (County and Director Perez referred to collectively as "Defendants") request that this Court stay all proceedings and administratively close the case until the ongoing state criminal investigation and subsequent administrative investigation into the subject incident have been concluded.[1] Alternatively, Defendants request an extension of time until seven days from the entry of an order denying the requested stay to file their response to the Complaint.

---

[1] This Court has granted stays under circumstances similar to those here. *See, e.g.*, *Prosper v. Martin*, 239 F. Supp. 3d 1347, 1350 (S.D. Fla. 2017) (Altonaga, J.); *Acosta v. Miami-Dade County*, 16-Civ-23241 (DE 7) (Ungaro, J.); *Young v. Miami-Dade County*, 217 F. Supp. 3d 1353, 1356 (S.D. Fla. 2016) (Altonaga, J.); *Rincon v. Village of Palmetto Bay*, Case No. 16-Civ-22254 (DE 25) (Gayles, J.); *Perkins, et al. v. City of Miami Beach*, Case No. 14-Civ-21923 (DE 56) (Ungaro,

This action arises out of the shooting of decedent Kentrill Carraway by Defendant Miami-Dade Police Officer George Eugene ("Officer Eugene") on May 19, 2016.  Plaintiff, the personal rrepresentative for Mr. Carraway's estate, has alleged claims for excessive force in violation of rights under § 1983 against Director Perez (Count I),Officer Eugene (Count II), and the County (Count III); wrongful death against Officer Perez (Count IV), the County (Count V), and Officer Eugene (Count VI); negligent hiring, retention and/or supervision against the County (Count VII) and Officer Perez (Count VIII); and assault and battery against the County (Count IX), Officer Perez (Count X), and Officer Eugene (Count XI).

Every police-involved incident resulting in the death of an individual is automatically and criminally investigated—formerly by the Miami-Dade County Police Department ("MDPD"), and now, pursuant to a Memorandum of Understanding entered into in November 2014, by the Florida Department of Law Enforcement ("FDLE").  Once FDLE completes its investigation into the incident, the State Attorney's Office then receives and reviews the investigative file and decides whether to pursue state criminal charges against the involved officer(s) or to clear them of criminal wrongdoing. Then, once the criminal investigation is concluded, the MDPD Professional Compliance Bureau finalizes its administrative investigation to determine whether any employment discipline is appropriate.  As of today, the FDLE investigation remains open.  Thus, all reports, documents, and information created or obtained in connection with the subject incident are protected from disclosure pursuant to applicable state and federal law pending the completion of these criminal and administrative investigations.  This includes, *inter alia*, reports related to

---

J.); *Arnold v. Sainvil, et al.*, Case No. 15-Civ-20973 (DE 53) (Gayles, J.); *Rogers v. Miami-Dade County*, Case No. 12-Civ-23506 (DE 30) (Graham, J.); *Urrea v. Miami-Dade County, et al.*, Case No. 12-Civ-22101 (DE 38) (Hoeveler, J.); *Gregory, et al. v. Miami Dade County*, Case No. 13-Civ-21350 (DE 18) (Graham, J.).

physical evidence taken from the scene that are critical to determine what occurred during the incident.  Thus, while these investigations are ongoing, the County will be unable to respond to Plaintiff's discovery requests with respect to any documents created in response to the incident.  It is important to note that, like Plaintiff, neither do Defendants have any access to the documents or information in the investigative file due to its protected status. Thus, <u>all</u> parties are left without documents and evidence needed to proceed with this lawsuit.

For example, without the documents, evidence, and information discovered by the FDLE members who investigated the incident, Defendants have practically no ability to refute Plaintiff's allegation that a constitutional violation occurred.  As a result, the County is effectively left without its most significant defense to a *Monell* claim: that there is no basis for municipal liability because plaintiff suffered no constitutional injury at the hands of an individual police officer.  *Jeanty v. City of Miami*, 876 F. Supp. 2d 1334, 1346 (S.D. Fla. July 13, 2012). Without the protected information, the County is also unable to refute any allegations that it is vicariously liable under state law for Officer Eugene's alleged actions.  Indeed, without access to the investigative file, the County cannot even determine with reasonable certainty what affirmative defenses are available to it at this time.

Thus, Defendants request that this Court stay all proceedings and administratively close this matter until the conclusion of all criminal and administrative investigations into the incident which relates to the allegations in this case.

## **<u>ARGUMENT</u>**

"The decision to stay a civil action pending resolution of a parallel criminal proceeding is a matter of court discretion." *Perkins*, Case No. 14-Civ-21923 (DE 56) (Ungaro, J.) (citing *Clinton v. Jones*, 520 U.S. 681, 706 (1997)). Consistent with their inherent power to control their dockets

OFFICE OF THE COUNTY ATTORNEY, MIAMI-DADE COUNTY, FLORIDA
TELEPHONE (305) 375-5151

and to ensure the fair adjudication of cases, district courts have broad discretion in deciding whether to stay proceedings. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) (finding that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket"); *CTI-Container Leasing Corp. v. Uiterwyk Corp.*, 685 F.2d 1284, 1288 (11th Cir. 1982) ("The inherent discretionary authority of the district court to stay litigation pending the outcome of [sic] related proceeding in another forum is not questioned."). A court must decide to stay a civil proceeding pending resolution of related criminal proceedings when "special circumstances" so require in the "interests of justice." *United States v. Lot 5, Fox Grove, Alachua County*, 23 F.3d 359, 364 (11th Cir. 1994) (citing *United States v. Kordel*, 397 U.S. 1, 12 n.27 (1970)). Indeed, a court may stay civil discovery from a defendant when there are parallel civil and criminal proceedings against the same defendant and participation in civil discovery would implicate the defendant's Fifth Amendment privilege. *See Wehling v. Columbia Broad. Sys.*, 608 F.2d 1084, 1087-89 (5th Cir. 1980); *see also Volmar Distributors, Inc. v. New York Post Co., Inc.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993).

A stay is warranted here because the underlying incident is the subject of ongoing criminal and administrative investigations and because, as a result of those investigations, the County has no access to evidence that is critical to its defense in this civil action. As in *Prosper*, 239 F. Supp. 3d at 1350 (Altonaga, J.); *Acosta v. Miami-Dade County*, 16-Civ-23241 (DE 7) (Ungaro, J.); *Young*, 217 F. Supp. 3d at 1356 (Altonaga, J.); *Rincon*, Case No. 16-Civ-22254 (DE 25) (Gayles, J.); *Perkins*, Case No. 14-Civ-21923 (DE 56) (Ungaro, J.); *Arnold*, Case No. 15-Civ-20973 (DE 53) (Gayles, J.); *Rogers*, Case No. 12-Civ-23506 (DE 30) (Graham, J.); *Urrea*, Case No. 12-Civ-22101 (DE 38) (Hoeveler, J.); and *Gregory*, Case No. 13-Civ-21350 (DE 18) (Graham, J.), the

4

interests of justice warrant a stay of this case pending the conclusion of the state criminal investigation into this incident.

## I.   The Documents and Information Relating to the Subject Incident are Exempt From Disclosure Pursuant to State and Federal Law

It is well-established that "[w]hile Florida has a strong public policy in favor of open government, the sanctity of police records compiled during a criminal investigation also has a long heritage in Florida." *Barfield v. City of Ft. Lauderdale Police Dep't*, 639 So. 2d 1012, 1014 (Fla. 4th DCA 1994); *see also City of Riviera Beach v. Barfield*, 642 So. 2d 1135, 1136 (Fla. 4th DCA 1994) ("Although Florida maintains a strong public policy in favor of open government, the critical importance of preserving the confidentiality of police records surrounding and compiled during an active criminal investigation remains of significant concern.").

Accordingly, the legislature has codified a specific statutory exemption from disclosure providing that "[a]ctive criminal intelligence information and active criminal investigative information are exempt from s. 119.07(1) and s. 24(a), Art. I of the State Constitution." Fla. Stat. § 119.071(2)(c)(1). The purpose of the statute is to prevent premature public disclosure of criminal investigative information, since disclosure could impede an ongoing investigation. *See White v. City of Ft. Lauderdale*, No. 08-60771–CIV, 2009 WL 980287, at *3 (S.D. Fla. April 10, 2009) (Simonton, J.) (citing *Barfield*, 642 So. 2d at 1137). Criminal investigations and criminal intelligence information are considered active if, even though there is no immediate anticipation of an arrest, "the investigation is proceeding in good faith, and the state attorney or grand jury will reach a determination in the foreseeable future." *Barfield*, 639 So. 2d at 1017.

In short, an active criminal investigation means that "an arrest or prosecution ***may*** result, not that it must." *Barfield*, 639 So. 2d at 1017 (emphasis added). Here, the state criminal investigation remains pending, and the State Attorney will determine whether to pursue criminal

5

charges in the foreseeable future.  Thus, the documents, evidence, and information created or obtained in connection with the subject incident "are presently part of an ongoing criminal investigation and are exempt from public disclosure under the Florida Public Records Law, which *evidences a strong policy interest on the part of the government in keeping the records confidential.*" *Id.* (emphasis added).

Additionally, once the criminal investigation is completed, regardless of whether criminal charges are brought, Officer Eugene will continue to be the subject of an internal affairs investigation. The documents, evidence, and information related to the incident will thus continue to be exempt from disclosure pursuant to Florida Statutes § 112.533(2)(a), until the conclusion of that investigation:

> A complaint filed against a law enforcement officer or correctional officer with a law enforcement agency or correctional agency and all information obtained pursuant to the investigation by the agency of the complaint *is confidential and exempt from the provisions of s. 119.07(1) until the investigation ceases to be active*, or until the agency head or the agency head's designee provides written notice to the officer who is the subject of the complaint, either personally or by mail, that the agency has either:
> 1.  Concluded the investigation with a finding not to proceed with disciplinary action or to file charges; or
> 2.  Concluded the investigation with a finding to proceed with disciplinary action or to file charges.

Fla. Stat. § 112.533(2)(a) (emphasis added).

In addition to the exemption from disclosure in Chapters 112 and 119 of the Florida Statutes, the documents, evidence, and information created or obtained in connection with the subject incident are also protected from disclosure to all parties pursuant to the "federal privilege for criminal investigative files [which] provides for the protection of files relating to ongoing criminal investigations." *Sirmans v. City of South Miami*, 86 F.R.D. 492 (S.D. Fla. 1980) (citing *Swanner v. United States*, 406 F.2d 716, 719 (5th Cir. 1969)); *see also In re U.S. Dep't of*

6

*Homeland Security*, 459 F.3d 565, 569-70 (5th Cir. 2006) (holding district court erred in refusing to recognize law enforcement privilege when determining whether the government would have to disclose documents which arguably were part of ongoing investigations); *Coughlin v. Lee*, 946 F.2d 1152, 1159 (5th Cir. 1991) ("Federal common law recognizes a qualified privilege protecting investigative files in an ongoing criminal investigation. . . .").

While it is well-settled that federal law governs the determination of the existence of a privilege in cases where the jurisdiction of the court is predicated upon federal law, "***[f]ederal courts will, however, consider state policies supporting a privilege in weighing the government's interest in confidentiality***." Coughlin, 946 F.2d at 1159 (emphasis added); *see also White*, 2009 WL 980287, at *3 ("[f]ederal courts may consider state policies supporting a privilege claim in assessing the government's interest in maintaining confidentiality"). Thus, courts must consider Florida's interest in and policy of protecting the confidentiality of the records and information related to an ongoing criminal investigation when applying the federal law enforcement privilege. Notably, this Court has previously recognized that the ongoing criminal investigation exemption in the Florida Public Records Law "***evidences a strong policy interest on the part of the government in keeping the records confidential*.**" *White*, 2009 WL 980287, at *3 (emphasis added).

The following factors have been considered in determining the application of the qualified privilege for police investigative files:

> (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police

7

investigation has been completed; (7) whether any intradepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; and (10) the importance of the information sought to the plaintiff's case.

*Sirmans*, 86 F.R.D. at 495.  Several of these factors are applicable here.

First, as noted previously, the investigation by FDLE has not been completed and remains active and ongoing.  Additionally, the case is under review by internal affairs, which will not conclude its investigation until the state criminal investigation is concluded.

Second, the potential unintended disclosure of criminal investigative information could obstruct the state criminal investigation.  Here, because the content of the investigative files is unknown, it is impossible to predict the extent to which a premature release of the confidential files may hinder or affect the ongoing criminal investigations.  However, examples of potential harm include, *inter alia*, the loss of potential leads or the possibility that the subject(s) of the investigation or others could become aware of sensitive and confidential information.

Third, because internal investigations are not only meant to determine whether any employment discipline is appropriate, but also to prevent future impropriety, the disclosure of the investigative materials before investigations are concluded could potentially chill governmental self-evaluation and resulting program improvement.

Finally, premature disclosure of investigative materials could negatively impact the objectivity, and thus, credibility, of internal investigations. For example, prematurely releasing any confidential investigative material could taint future witness statements or prevent internal affairs from obtaining further investigative materials.

Notably, Plaintiff will ***not*** be prejudiced by a stay of these proceedings so long as these files remain confidential, because Plaintiff will ultimately have access to the documents and

information once they are no longer exempt pursuant to Florida Statutes sections 119.071(2)(c)(1) and 112.53(2)(a). *See Barfield*, 639 So. 2d at 1018 ("[T]his is not a situation where the information sought will remain permanently confidential. Rather, once the investigations are concluded, if no charges are filed, the records would cease to be 'active' and thus subject to disclosure.").

In short, the federal qualified privilege, along with state law exemptions, protect critical information related to the subject incident from being disclosed *even to the Defendants themselves* until the conclusion of criminal and administrative investigations.

## II. The Court Should Stay These Proceedings Because Defendants are Unable to Properly Mount a Substantive Defense Until the State Criminal and Administrative Proceedings are Completed, and Plaintiff Would Not be Unduly Burdened by the Stay

In determining whether to stay these proceedings, the Court must balance the competing interests of the parties. *See Landis*, 299 U.S. at 254-55. Such balancing should be done "with a view toward accommodating those interests, if possible." *Wehling*, 608 F.2d at 1088 (granting plaintiff's motion to stay discovery where stay would not impose undue hardship on the defendant). This accommodation of the parties' interests is consistent with "the court's role in a civil proceeding . . . to ensure that fairness permeates the proceeding and to try to ascertain the truth." *SEC v. Healthsouth Corp.*, 261 F. Supp. 2d 1298, 1327 (N.D. Ala. 2003) (granting stay in light of open criminal investigation). In balancing the interests of the parties, courts consider several factors, including:

> (1) the interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay; (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal litigation.

9

*Golden Quality Ice Cream Co., Inc. v. Deerfield Specialty Papers, Inc.*, 87 F.R.D. 53, 56 (E.D. Pa. 1980); *see also Volmar Distributors*, 152 F.R.D. at 39. Additional factors considered are: (6) the status of the criminal proceeding, *Frierson v. City of Terrell*, Case No. 3:02-CV-2340, 2003 WL 22479217, at *2 (N.D. Tex. Aug. 4, 2003), and (7) the overlap of the criminal and civil cases, indicating the extent to which Fifth Amendment rights are implicated, *Heller Healthcare Finance v. Boyes*, Case No. 300CV1335D, 2002 WL 1558337, at *2 (N.D. Tex. July 15, 2002).

Of these factors, several courts have identified the overlap between the criminal and civil actions to be "the most important threshold issue in determining whether to grant a stay." *Dominguez v. Hartford Fin. Servs. Group, Inc.*, 530 F. Supp. 2d 902, 907 (S.D. Tex. 2008); *see also Lay v. Hixon*, Case No. 09-0075-WS-M, 2009 WL 1357384 (S.D. Ala. May 12, 2009) (citing *Dominguez* and holding same); *Chao v. Fleming*, 498 F. Supp. 2d 1034, 1039 (W.D. Mich. 2007) (holding same); *State Farm Lloyds v. Wood*, Case No. H-06-503, 2006 WL 3691115, at *2 (S.D. Tex. Dec. 12, 2006) (holding same); *cf. Perkins*, Case No. 14-Civ-21923 (DE 56) (Ungaro, J.) (noting "[t]he cases at bar substantially (if not entirely) overlap with the criminal investigation being conducted by the State Attorney's Office").

Here, the factors listed above weigh in favor of granting a stay of all proceedings.  Most notably, because the criminal investigation into the incident that forms the basis of Plaintiff's allegations remains open, the parties are left to litigate this case without the benefit of pertinent discovery as the documents, evidence, and information related to the incident are exempt from disclosure pursuant to Florida Statutes §§ 119.071(2)(c)(1) and 112.53(2)(a) and the federal qualified privilege.  This creates an onerous and irreparably harmful burden on the Defendants, as they will be effectively unable to mount a substantive defense to the claims against them.

### a.   A Denial of the Requested Stay Would Negatively Impact Plaintiff

Plaintiff's interest in proceeding expeditiously with this litigation does not weigh against entering the stay.  Any relief to which Plaintiff would be entitled at the end of this case would still be available after the stay has expired.  Plaintiff has preserved these claims by filing this action within the applicable statute of limitations.  But if the case goes forward, Plaintiff will be unable to pursue any meaningful discovery while the FDLE and State Attorney investigations remain pending, as all of the pertinent documents, evidence, and information related to the incident are exempt from disclosure and will therefore be unavailable to Plaintiff until those investigations are concluded.  Moreover, because criminal charges could potentially be filed against Officer Eugene, he may have little choice but to assert his Fifth Amendment privilege against self-incrimination. This would hinder Plaintiff's ability to effectively depose him.

### b.   Defendants Would be Prejudiced if Motion to Stay is Denied

As a defense to a *Monell* claim, Defendants may assert that no constitutional violation occurred. *Jeanty*, 876 F. Supp. 2d at 1346 (finding that if a plaintiff "suffers no constitutional injury at the hands of individual police officers, there can be no basis for municipal liability under Section 1983 and *Monell*") (citing *Los Angeles v. Heller*, 475 U.S. 796 (1986)); *Sada v. City of Altamonte Springs*, 434 F. App'x 845, 851 (11th Cir. 2011) ("[B]ecause Sada was not deprived of any constitutional or statutory rights, the City is not municipally liable for claims of negligence for any insufficient training under § 1983."); *Rooney v. Watson*, 101 F.3d 1378, 1381 (11th Cir. 1996) ("[A]n inquiry into a governmental entity's custom or policy is relevant only when a constitutional deprivation has occurred."). Without the benefit of the currently-protected documents, the Defendants will be practically unable to raise this argument.

As a consequence of the ongoing criminal and administrative investigations, Defendants do not have the benefit of Officer Eugene's full account of the subject incident.  Defendants,

11

therefore, will have no way to meaningfully defend the legality of his actions. Hence, the County would suffer irreparable prejudice if required to proceed without access to Officer Eugene's complete account of the events surrounding the alleged incident.

In situations such as this, where one party would suffer prejudice due to another party's Fifth Amendment assertion, courts have granted a stay of civil proceedings pending the completion of criminal investigations. *See, e.g.*, *Bruner Corp. v. Balogh*, 819 F. Supp. 811, 816 (E.D. Wis. 1993) (granting stay because "it is not likely that either [co-defendant] could proceed to trial without meaningful discovery" from the defendant who asserted the privilege); *Volmar*, 152 F.R.D. at 41 (staying discovery of all defendants, including those who had no Fifth Amendment rights to assert, to avoid prejudicing their defense); *Librado v. M.S. Carriers, Inc.*, Case No. 3:02-CV-2095D, 2002 WL 31495988, at *2-3 (N.D. Tex. Nov. 5, 2002) (granting stay where the testimony of the person invoking the privilege was essential to a fair adjudication of the case and where that person's conduct was the basis for plaintiffs' claims).

In *Librado*, the plaintiff sought to hold a company liable for its employee's automobile crash—an incident for which the employee was also charged criminally for negligent homicide. 2002 WL 31495988, at *1. When the employee asserted his Fifth Amendment privilege, "thereby stymieing [the employer's] ability to defend itself," the district court agreed to a stay. *Id.* at *2-3. The court was particularly moved by the fact that the company's liability depended on its employee's conduct and that it would be "subject . . . to undue prejudice" without that employee's testimony. *Id.*

Similarly, in *Bruner Corp.* and *Volmar*, the district courts held that a stay was proper where at least one defendant asserted the privilege, disadvantaging not only his own civil defense but that of his co-defendants as well. *See Bruner Corp.*, 819 F. Supp. at 816; *Volmar*, 152 F.R.D. at 41.

12

Indeed in *Volmar*, the court explained that only a **complete** stay avoids duplication of effort and unnecessary litigation costs. *Volmar*, 152 F.R.D. at 41. The court reasoned that if only a partial stay is granted, the parties may need to re-depose individuals once it is lifted and plaintiff proceeds to depose the defendants whose Fifth Amendment rights were implicated and were central figures to the litigation. *Id.*

Here, a stay of civil proceedings is similarly warranted because Officer Eugene, whose Fifth Amendment rights may be implicated, is the "central" figure in this litigation. Thus, denying the stay would likely result in additional expenses for the parties, without expediting the discovery process as depositions and other discovery would have to be re-taken once Officer Eugene is able to testify without implicating his Fifth Amendment rights.

Additionally, just as in *Librado*, *Bruner Corp.*, and *Volmar*, the Court here should grant the stay because it would be unjust to require Defendants to proceed with discovery and trial while substantially and irreparably prejudicing its defense due to its co-defendant's assertion of a constitutional right. This is particularly true when the basis for Defendants' alleged liability is based on its co-defendant's actions. A stay of these proceedings is also warranted because Defendants cannot properly defend against this lawsuit until the criminal and administrative investigations are completed and the pertinent documents and information are released.

### c.   The Court Would not be Burdened if Motion to Stay is Granted

Additionally, this Court would suffer no inconvenience or inefficiency by granting a stay. *See Librado*, 2002 WL 31495988, at *3 (recognizing that "granting a stay will not unduly interfere with the court's management of its docket"). Indeed, a stay would assist in narrowing the issues in this case because once the relevant information within the investigative file is revealed it may be possible to eliminate some of the existing claims. On the other hand, without a stay there is a

real risk that critical evidence could become available on the eve of trial, or even after trial, which would necessarily create delays and inefficiencies for both the parties and the Court.  For example, a party could move to reopen this case even after final judgment because of newly-discovered evidence that would become available after the conclusion of the criminal and administrative investigations.  *See* Fed. R. Civ. P. 60(b)(2) (permitting court to relieve party from final judgment based on newly-discovered evidence).

And any inconvenience to the Court would be outweighed by the Court's interest in fairness. "Although promptness in judicial administration is highly desirable, delay may sometimes be necessary to the mission of doing justice. We are all too often reminded that 'justice delayed is justice denied.' But, it is equally true that in some situations, 'justice rushed is justice crushed.'" *McMullen v. Bay Ship Mgmt*., 335 F.3d 215, 219 (3d Cir. 2003) (reversing dismissal where plaintiff asserted privilege and district court refused to grant a stay).  A stay here would allow the Court to fairly adjudicate this action on its merits.

### d.    The Interests of the Public Would Not be Adversely Affected By a Stay

Lastly, the interests of the public and persons not parties to the civil litigation would not be adversely affected by a stay. Indeed, the public interest may even be furthered by a stay, as the facts and circumstances of the alleged incident would be better evaluated by the Court and all parties with the help of Officer Eugene's testimony and the benefit of the documents, evidence, and information created and obtained in response to the incident.  The public also has a strong interest in permitting the State Attorney's Office to investigate this case in the ordinary course of business, with the attendant secrecy that accompanies criminal investigations. But because "civil discovery rules are quite broad, they would permit discovery that likely will interfere with the criminal investigation." *Halliday v. Spjute*, No. 07-00620-CIV, 2008 WL 5068588, at *4 (E.D.

14

Cal. Nov. 25, 2008). Thus, "the risk of compromising the criminal case can be avoided by staying the civil suit." *Id.*

As the Supreme Court has held, delay is justified "if the public welfare or convenience will thereby be promoted." *Landis*, 299 U.S. at 256; *see also Campbell v. Eastland*, 307 F.2d 478, 487 (5th Cir. 1962). ("Administrative policy gives priority to the public interest in law enforcement. This seems so necessary and wise that a trial judge should give substantial weight to it in balancing the policy against the right of a civil litigant to a reasonably prompt determination of his civil claims and liabilities."). Staying the proceedings here "would benefit the public by allowing the Government to conduct a complete, unimpeded investigation into potential criminal activity." *Healthsouth Corp.*, 261 F. Supp. 2d at 1325.

### III.   Defendants Request Additional Time to Respond to the Complaint in the Event the Court Denies A Stay

Defendants submit that a stay is warranted in this case to conserve resources and avert any unnecessary consequences attendant to Officer Eugene asserting his right against self-incrimination while investigations remain pending.   However, should the Court disagree, Defendants would respectfully request that the Court grant seven days from entry of an order denying a stay for them to respond to the Complaint.

### <u>CONCLUSION</u>

All of the relevant factors in this case weigh in favor of granting a stay of these proceedings. Neither the parties, the public, nor other persons would be prejudiced by a stay.  The denial of a stay, however, would substantially and irreparably prejudice all parties because they would be required to litigate this case without access to critical criminal investigative information, nearly every document relevant to a disposition of this civil case. Therefore, the Court should stay these proceedings, including all discovery, and administratively close the case until the related criminal

and administrative investigative proceedings are concluded.[2]   By granting a stay, the Court exercises its inherent discretionary power to assure the parties and the public of a fair and just adjudication of this case.

Dated: November 30, 2017                    Respectfully submitted,

                                            ABIGAIL PRICE-WILLIAMS
                                            Miami-Dade County Attorney
                                            Stephen P. Clark Center
                                            111 N.W. 1st Street, Suite 2810
                                            Miami, FL  33128

                              By:     s/ Erica Zaron
                                      Erica S. Zaron, Esq.
                                      Florida Bar No. 0514489
                                      Assistant County Attorney
                                      Telephone:     (305) 375-5151
                                      Facsimile:     (305) 375-5611
                                      E-mail: zaron@miamidade.gov


## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 7.1(a)(3) of the Local Rules of the Southern District of Florida, undersigned counsel certifies that she has conferred with opposing counsel who is unable at this point to give Plaintiff's position on the motion.  Opposing counsel has been recuperating from back surgery, but will speak with his client soon and provide a response to this motion thereafter. Opposing counsel does not object to the undersigned's request for a seven-day extension of time to respond to the Complaint in the event that the Court denies a stay.


                                            s/ Erica Zaron
                                            Assistant County Attorney

---

[2] Defendants would of course provide the Court and Plaintiff periodic updates regarding the status of the ongoing investigations, to the best of its ability.

16

## CERTIFICATE OF SERVICE

**I hereby certify** that a true and correct copy of the foregoing was served on November 30,

2017, on all counsel or parties of record in the manner indicated on the Service List below.


___ s/ Erica Zaron _____

Erica S. Zaron


## SERVICE LIST
*Terry Carraway v. Juan J. Perez, et al.*
Case No.: 17-22929-CIV-KING


Barry S. Mittelberg, Esq.
Email: barry@mittelberglaw.com
Valeria Angelucci, Esq.
BARRY S. MITTELBERG, P.A.
10100 W. Sample Road
Suite 407
Coral Springs, FL 33065
Telephone: (954) 752-1213
Fax: (954) 752-5299
Attorney for Plaintiff
***Service by Notice of Electronic Filing***

Erica S. Zaron, Esq.
Assistant County Attorney
E-Mail: zaron@miamidade.gov
Miami-Dade County Attorney's Office
Stephen P. Clark Center
111 NW 1st Street, Suite 2810
Miami, FL 33128
Telephone:  (305) 375-5151
Fax:  (305) 375-5611
Attorney for: Miami-Dade County and Director Perez
***No Service Made***

17