# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# MIAMI DIVISION

CASE NO. 1:17-cv-22929-JLK

TERRY CARRAWAY, as personal
representative for the estate of his deceased
son, KENTRILL CARRAWAY,

    Plaintiff,

v.

JUAN J. PEREZ, in his official capacity
as Chief of Police of Miami Dade County, Florida;
GEORGE EUGENE; and MIAMI DADE COUNTY,
a political subdivision of the State of Florida,

    Defendants.
_____/

## **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

THIS MATTER is before the Court on the Motion to Dismiss filed by Defendants Miami-Dade County (the "County") and Juan J. Perez ("Director Perez") on August 21, 2019 (DE 16) (the "Motion").[1]

## I. BACKGROUND

The case arises from a May 2016 incident in which Kentrill Carraway was allegedly shot and killed by Miami-Dade County police officer George Eugene. Compl. ¶ 2, DE 1. Plaintiff, as personal representative of Kentrill Carraway's estate, now brings this action against the County, Director Perez, and Officer Eugene asserting claims for deprivation of civil rights under 42 U.S.C. § 1983, wrongful death, among others. According to the allegations in the Complaint, on May 19, 2016, Kentrill Carraway was congregating with friends in the backyard of a property in

---

[1] The Court has also considered Plaintiff's Response, filed September 13, 2019 (DE 19), and Defendants' Reply, filed September 26, 2019 (DE 22).

Miami-Dade County when a police car "charged up a vacant lot toward the backyard where these young black men were congregating." *Id.* ¶¶ 17–18. "With guns drawn, the Miami Dade Police, including [Officer Eugene], began to yell commands . . . ordering them to halt and put their arms up." *Id.* ¶ 18. Carraway began to run from the officers. *Id.* ¶ 19. After Carraway had run approximately fifteen yards, two officers "opened fire," and Officer Eugene "shot Carraway in the back twice, killing him." *Id.*

Plaintiff filed this action on August 2, 2017. *See* DE 1. On February 5, 2018, the Court stayed the action pending resolution of the underlying criminal and administrative proceedings related to the incident. *See* DE 8. On August 1, 2019, the Court lifted the stay, reopened the case for further proceedings, and ordered the County and Director Perez to respond to the Complaint. *See* DE 15.[2]

Defendants then filed the instant Motion seeking dismissal of several counts in Plaintiff's Complaint for failure to state a claim. First, they argue that all claims against Director Perez in his official capacity (Counts I, IV, VIII, and X) should be dismissed as duplicative of the claims against the County itself. As to the § 1983 claim against the County (Count III), Defendants argue that the Complaint fails to plead sufficient facts showing (a) that Officer Eugene used excessive force in violation of the Fourth Amendment or (b) that the County had a "policy, custom, or practice" that caused any such Fourth Amendment violation as required to hold the County liable under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Finally, Defendants seek dismissal of the remaining state law tort claims (Counts VII, VIII, IX, and X), arguing that such claims are subsumed by Plaintiff's wrongful death claim as a matter of law, and that they fail to allege the requisite elements under Florida law in any event.

---

[2] Officer Eugene was not ordered to respond to the Complaint as the docket does not reflect that service has been effectuated on him, and he has not otherwise entered an appearance in the case.

2

In response, Plaintiff concedes that the claims against Director Perez "should be dismissed as redundant" and that the state law tort claims should be "subsumed into the wrongful death claim," thus warranting dismissal of Counts I, IV, VII, VIII, IX, and X. *See* Resp. ¶ 4.[3] However, Plaintiff maintains that the Motion should be denied as to the § 1983 claim against the County, arguing that (a) the "facts alleged in the Complaint support the contention that the use of deadly force was unreasonable and excessive," *id.* ¶ 5, and (b) the Complaint adequately alleges that "Miami Dade Police has the custom of not properly training and disciplin[ing] officers, in particular with regard to the proper use of firearms, communication skills, tactics skills, and decision making skills," *id.* ¶ 22.[4]

## II. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To meet this "plausibility" standard, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. While this "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). A complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at

---

[3] While Plaintiff states in passing that the Motion should be denied as to Count VII, Plaintiff has already conceded that these state law tort claims should be subsumed into the wrongful death claim and offers no reason why this particular claim should be treated differently.

[4] Although Plaintiff also argues that the Motion should be denied as to the wrongful death claim in Count V, the Motion does not appear to seek dismissal of this claim. Therefore, this order only addresses the § 1983 claim at issue in Count III.

3

678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). As such, "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).

## III. DISCUSSION

"To impose section 1983 liability on a municipality, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *Casado v. Miami-Dade Cty.*, 340 F. Supp. 3d 1320, 1326 (S.D. Fla. 2018) (quoting *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004)). Here, the Complaint alleges that Carraway's Fourth Amendment right to be free from excessive force was violated when Officer Eugene shot him in the back, *see* Compl. ¶ 66, and that the County had a "policy, custom or usage" whereby it "hired officers who were substandard and who were not properly trained and disciplined, including [Eugene], who lacked sufficient training on the proper use of firearms, communication skills, defective tactics skills, and decision making skills," *id.* ¶ 70.

Where, as here, the alleged constitutional violation is excessive force under the Fourth Amendment, the claim must be analyzed under the Fourth Amendment's "reasonableness" standard. *See Graham v. Connor*, 490 U.S. 386, 395 (1989). Thus, the issue is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Cordoves v. Miami-Dade Cty.*, 92 F. Supp. 3d 1221, 1235 (quoting *Graham*, 490 U.S. at 397). This "requires careful consideration of a number of factors, including 'the severity of the crime at issue, whether the suspect poses an

immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Id.* (quoting *Graham*, 490 U.S. at 396).

Based on the well-pled allegations in the Complaint, the Court finds that Plaintiff has adequately alleged excessive force in violation of the Fourth Amendment. According to the Complaint, Kentrill Carraway was congregating with friends in the backyard of a Miami-Dade County property when the officers charged up toward them. The Complaint alleges that the officers did not have a warrant to arrest Carraway, and nothing else in the Complaint suggests that Carraway was suspected of having committed a crime, much less a serious one. Moreover, the Complaint alleges that Carraway was running *away* from the officers when he was shot twice in the back, which suggests that he did not pose an immediate danger to the officers at the time of the shooting. Taking these allegations as true and viewing them in the light most favorable to Plaintiff, the Court finds that Plaintiff has plausibly alleged that Officer Eugene's use of deadly force was unreasonable under the circumstances.

In support of their Motion to Dismiss, Defendants argue that "merely running away from officers does not inevitably lead to the conclusion that a suspect posed no threat." Reply at 3. But the standard on a motion to dismiss is whether such a conclusion is *plausible*, not inevitable. *Iqbal*, 556 U.S. at 678. Defendants also argue that the Complaint fails to allege that Carraway was unarmed at the time of the shooting. Reply at 3–4. However, Defendants cite no case law holding that a plaintiff must allege that he was unarmed as a prerequisite to stating an excessive force claim, and the Court declines to adopt such a bright-line rule in the Fourth Amendment context, where the use of force must be evaluated on a "case-by-case basis 'from the perspective of a reasonable officer on the scene.'" *Tarpley v. Miami-Dade Cty.*, 212 F. Supp. 3d 1273, 1283 (S.D. Fla. 2016) (quoting *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1559 (11th Cir. 1993)).

5

Nonetheless, the Court finds that the § 1983 claim against the County must be dismissed because the Complaint fails to allege facts showing that the shooting resulted from a "policy or custom" of Miami-Dade County. As mentioned above, to impose § 1983 liability on a county, the plaintiff must show that the alleged constitutional violation was caused by an official "policy" or "custom." *See Grech v. Clayton Cty.*, 335 F.3d 1326, 1329 (11th Cir. 2003). "To establish a policy or custom, it is generally necessary to show a persistent and widespread practice." *Depew v. City of St. Marys*, 787 F.2d 1496, 1499 (11th Cir. 1986). "Random acts or isolated incidents are usually insufficient to establish a custom or policy." *Gomez v. Metro Dade Cty.*, 801 F. Supp. 674, 679 (S.D. Fla. 1992).

Here, the Complaint fails to allege facts identifying any official policy or custom that caused the alleged shooting of Kentrill Carraway. Specifically, Plaintiff alleges no facts showing a widespread practice of failing to train or discipline police officers that has resulted in similar shooting incidents. Instead, as Defendants point out, the Complaint only mentions the isolated incident involving Kentrill Carraway. Moreover, the Complaint offers nothing more than labels and conclusions regarding a "policy" or "custom," particularly with respect to any incidents that might have occurred beyond the Carraway shooting, claiming, for example, that the County has a "policy/custom tolerating the use of excessive force by members of its police department," and a "policy, custom or usage" of hiring "substandard" police officers who are not "properly" trained and disciplined. Compl. ¶¶ 69–70. Such "conclusory allegations, unwarranted deductions [and] legal conclusions masquerading as facts" are not enough to survive dismissal. *Oxford Asset Mgmt.*, 297 F.3d at 1188. Because Plaintiff fails to allege sufficient facts identifying a policy or custom that caused the alleged Fourth Amendment violation in this case, the § 1983 claim against the County must be dismissed.

## IV. CONCLUSION

Accordingly, it is **ORDERED, ADJUDGED, AND DECREED** that Defendants' Motion to Dismiss **(DE 16)** be, and the same hereby is, **GRANTED**; Counts I, IV, VII, VIII, IX, and X in Plaintiff's Complaint **(DE 1)** are hereby **DISMISSED** with prejudice; and Count III is **DISMISSED** without prejudice to file an Amended Complaint within **twenty (20) days** from the date of this Order.

**DONE AND ORDERED** in Chambers at the James Lawrence King Federal Justice Building and United States Courthouse, Miami, Florida, this 8th day of November, 2019.

JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE

cc: All counsel of record